Robert LAWSON, et al., Plaintiffs,

v.

Richard L. DUGGER, et al., Defendants.

No. 83–8409–CIV.

United States District Court,
S.D. Florida.

Feb. 16, 1994.

Peter M. Siegel, Randall C. Berg, Jr., Florida Justice Institute, Inc., Miami, FL, for plaintiffs.

James A. Peters, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for defendants.

## AMENDED FINAL JUDGMENT ON RE-MAND AND ORDER AFFIRMING PRIOR FINAL JUDGMENT AND AMENDMENT THERETO

ARONOVITZ, District Judge.

THIS CAUSE comes before the Court on remand from two Orders entered by the United States Court of Appeals for the Eleventh Circuit on December 21, 1987 and February 1, 1990, respectively.

The Eleventh Circuit has remanded this action for a determination of (1) whether "further factual findings, if any, in accordance with the standards set forth in *Thornburgh [v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) ]," [1] are needed

to determine whether the prison officials' conduct in restricting the plaintiffs, inmates in the Florida Department of Corrections institutions, from access to religious literature of the Hebrew Israelite faith violates the plaintiffs' First Amendment right to the free exercise of religion; and (2) whether the defendants' proposed plan for censoring literature comports with the procedural due process requirements as set forth in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *See Lawson v. Dugger,* 840 F.2d 781, 786 (11th Cir.1987).

The Court has considered the opinions of the Eleventh Circuit, memoranda of law submitted by counsel on the issues on remand, oral argument of counsel, the applicable law and pertinent portions of the record, and is otherwise fully advised in the premises. For the following reasons, the Court hereby RE-AFFIRMS and READOPTS the factual findings of facts contained in its original Memorandum Opinion Including Findings of Fact and Conclusions of Law, *see Lawson v. Wainwright,* 641 F.Supp. 312 (S.D.Fla.1986), and the conclusions of law contained in the Final Judgment entered on July 17, 1986 in favor of the plaintiff class, as well as in the Amendment to Final Judgment, entered on July 25, 1986.

### Factual and Procedural Background

This is a class action which challenges on First Amendment, equal protection and due process grounds, the refusal by officials of the Florida Department of Corrections to permit inmates in the Department's penal institutions who profess adherence to the Hebrew Israelite faith to receive religious literature of that faith and to engage in the practice of the Hebrew Israelite religion in the manner allowed to inmate members of other religious groups.

The relevant history of this case dates back to 1986 when, after a bench trial lasting a week, the Court entered a Memorandum Opinion Including Findings of Fact and Conclusions of Law ("Memorandum Opinion"), enjoining the defendants from denying to the plaintiff class members their right to freely exercise the Hebrew Israelite faith while in-

---

1. *See Lawson v. Dugger,* Case No. 86–5774, 897 F.2d 536 (11th Cir.), Order on Remand from the Supreme Court of the United States (February 1, 1990) (per curiam) at p. 4.

carcerated in any of the Florida Department of Corrections Institutions. *See Lawson v. Wainwright,* 641 F.Supp. 312 (S.D.Fla.1986). A Final Judgment and Amendment thereto were entered on July 18, 1986 and July 25, 1986, respectively, in accordance with decision in the Memorandum Opinion. The defendants appealed the Final Judgment to the United States Court of Appeals for the Eleventh Circuit.

On December 21, 1987 the Eleventh Circuit affirmed the injunction, finding that the restrictions imposed by the defendants violated the plaintiffs' First Amendment right to freely exercise their religious faith. It remanded the issue of whether the defendants' proposed plan for censoring literature comported with the procedural due process requirements as set forth in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *See Lawson v. Dugger,* 840 F.2d 781 (11th Cir.1987). The defendants moved for a rehearing, which the Eleventh Circuit denied, holding that it properly selected and applied to the instant case *Procunier v. Martinez, supra,* as the controlling standard of review on the First Amendment claim. *See Lawson v. Dugger,* 840 F.2d 779 (11th Cir. 1988).

On appeal by the defendants, the Supreme Court of the United States vacated the Eleventh Circuit's opinion and remanded the case for further proceedings on the First Amendment claim in light of its then recent opinion in *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). *See Dugger v. Lawson,* 490 U.S. 1078, 109 S.Ct. 2096, 104 L.Ed.2d 658 (1989). In *Thornburgh,* the Supreme Court held that regulations of incoming correspondence to prisoners are valid if they are "reasonably related to legitimate penological interests." *Thornburgh,* 490 U.S. at 421, 109 S.Ct. at 1885. On February 1, 1990 the Eleventh Circuit, in turn, remanded the case to this Court to make further factual findings, if any, in accordance with the standards set forth in *Thornburgh.*

On January 4, 1994, this Court conducted a hearing and heard oral argument on the merits of the two aforementioned issues on remand. At the hearing, the defendants raised for the first time the argument that the change in prison official personnel has rendered this action moot because there no longer is a case or controversy between the plaintiffs and the new prison officials. The merits of the defendants' mootness argument as well as the issues on remand are addressed below.

## Discussion

### A. PLAINTIFFS' FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION

#### 1. *Applicable Standard of Law*

The only aspect of the First Amendment claim at issue is whether the defendants' censorship of Hebrew Israelite literature violates the plaintiffs' free exercise of religion. Although this issue was remanded to be evaluated in accordance with the "reasonableness" standard articulated in *Thornburgh,* plaintiffs urge that the proper standard of law to be applied is the "compelling interest" test under the newly enacted Religious Freedom Restoration Act of 1993 ("RFRA" or the "Act"). Pub.L. No. 103–141, 107 Stat. 1488 (enacted November 16, 1993). Plaintiffs claim that with the adoption of RFRA, the standard of law has returned to that in effect when this Court first ruled. Defendants maintain otherwise and oppose the application of RFRA to this case. Before the Court addresses RFRA and its applicability, a discussion of the significant pre-RFRA cases regarding the First Amendment right to the free exercise of religion is warranted.

It appears that the legal standards governing claims of violations of the First Amendment right to the free exercise of religion, particularly in the prison context, were evolving at and around the time that the Court first ruled and while the case was on appeal.

Early Supreme Court decisions dealing with the free exercise of religion issue occurred outside the prison context. In *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Supreme Court held that a South Carolina statute that disqualified a Seventh Day Adventist from receiving unemployment compensation benefits based on her unavailability to work on Saturdays due to religious reasons violated the free

exercise of religion. In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the State of Wisconsin's requirement of compulsory formal education after the eighth grade for Amish children was struck down as violative of the First Amendment right to the free exercise of religion. In these cases, the inquiry was "whether some compelling state interest" justified the infringement of the First Amendment right to free exercise of religion. *Sherbert*, 374 U.S. at 406, 83 S.Ct. at 1795.

In 1974, the Supreme Court decided *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), which was the first significant decision by the Supreme Court regarding First Amendment rights in the prison context. That case involved a challenge by state prisoners of, among other things, inmate mail censorship regulations set forth by the California Department of Corrections. The Supreme Court in *Martinez* established the following standard:

> First, ... [p]rison officials ... must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

*Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811.

This Court applied the standard articulated in *Martinez* at the trial of this case and specifically found that "the outright ban of the literature is a greater than necessary restriction on the plaintiffs' right to freely exercise their religion." *Lawson v. Wainwright*, 641 F.Supp. at 323. The Court, therefore, ruled that the defendants' censorship actions violated the First Amendment. As previously mentioned, the application of *Martinez* as the controlling standard of review on the First Amendment claim was upheld by the Eleventh Circuit on appeal. *See Lawson v. Dugger*, 840 F.2d 779 (11th Cir.1988).

While this case was on appeal, *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), was decided and "laid down a different standard of review from that articulated in *Martinez*." *Thornburgh*, 490 U.S. at 409, 109 S.Ct. at 1879. *Turner* held that the proper inquiry in these cases is whether the prison regulations are "reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89, 107 S.Ct. at 2262. This standard was but a refinement of the reasonableness standard earlier set forth in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), and *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

The reasonableness standard articulated in *Turner* clearly was a different standard than that set forth in *Martinez*. This inconsistency was resolved in *Thornburgh* when the Supreme Court expressly limited *Martinez* to regulations concerning outgoing correspondence, *see Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881, and adopted *Turner*'s reasonableness standard as the standard to be applied to regulations that restrict access to incoming literature.

Thus, *Thornburgh* established the applicable standard of law in cases involving censorship of incoming inmate mail at the time that the Eleventh Circuit remanded this action to this Court. However, *Thornburgh* was superseded by the enactment of the Religious Freedom Restoration Act of 1993, *supra*, on November 16, 1993.

RFRA is a clear expression of Congressional intent to protect the free exercise of religion against substantial government infringement without compelling justification. The express purposes of the Act are:

> (1) to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398[, 83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder*, 406 U.S. 205[, 92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

> (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

Religious Freedom Restoration Act of 1993, *supra*, at § 2(b). Thus, while RFRA does not specifically address *Thornburgh*, it is

clear that Congress does not agree with the reasonableness standard articulated therein and instead, has established a uniform standard to be applied in *"all* cases where free exercise of religion is substantially burdened," by "restor[ing] the compelling interest test." *Id.* (emphasis added). This "compelling interest test" is as follows:

(a) IN GENERAL.—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) EXCEPTION.—Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

Religious Freedom Restoration Act of 1993, *supra,* at § 3(a), (b).

■ The defendants argue that RFRA should not be applied retroactively to this case. It appears that they seek to belatedly reopen the record in this case under the *Thornburgh* standard. This position, however, is directly contrary to the express provision of RFRA, which provides that:

(a) IN GENERAL.—This Act applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and *whether adopted before* or after *the enactment of this Act.*

Religious Freedom Restoration Act of 1993, *supra,* at § 6(a) (emphasis added). While the Act does not use the actual term "retroactive," it is abundantly clear from the language that it applies to this case. This case unquestionably is an "implementation of [Federal and State] law, . . . statutory or otherwise, . . . adopted before . . . the enactment of" the Act. *Id.*

In the absence of a constitutional challenge to the Act, this Court finds no legitimate reason to not apply RFRA to this case. Accordingly, it hereby adopts RFRA and finds that RFRA is directly applicable to the facts of this case. For the reasons discussed below, the Court further finds that it may apply RFRA based on the existing record of this case, without the taking of additional evidence or testimony.

### 2. *Application of RFRA to the Instant Case*

Under the compelling interest test of RFRA, the appropriate inquiry in this case is (1) whether the censorship of Hebrew Israelite literature is in furtherance of a compelling governmental interest; and (2) whether it is "the least restrictive means of furthering that compelling governmental interest." *See* Religious Freedom Restoration Act of 1993, *supra,* at § 3(b).

■ The defendants are able to satisfy the first prong of the RFRA standard. It is well established that prison officials have a compelling interest in maintaining internal order and security in the state penological institutions. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Harris v. Forsyth,* 735 F.2d 1235 (11th Cir.1984); *Sullivan v. Ford,* 609 F.2d 197 (5th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). It is clear that the defendants' practice of routinely banning the religious literature at issue furthers this compelling interest.

As to the second prong of the RFRA test, the Court concludes that the outright ban of Hebrew Israelite literature is not "the least restrictive means of furthering that compelling governmental interest." There is no need to reopen the record of this case because the same evidence adduced at trial that supported the Court's initial finding that "the outright ban of the literature is a greater than necessary restriction on the plaintiffs' right to freely exercise their religion," *see Lawson v. Wainwright,* 641 F.Supp. at 323, logically also supports the finding that such ban is not the "least restrictive means."

Based on the foregoing, the Court hereby affirms its original decision.

### B. EXISTENCE OF A CASE OR CONTROVERSY

At the January 4, 1994 hearing, the defendants raised for the first time the argument that the entire action is rendered moot by

the substitution of new personnel as prison officials of the Florida Department of Corrections for those originally named as defendants.[2] They also claim that additional evidence on this issue is required.

■ Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies. U.S. Const. art. 3, § 2. *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976); but see *Honig v. Doe*, 484 U.S. 305, 329–32, 108 S.Ct. 592, 607–09, 98 L.Ed.2d 686 (1988) (Rehnquist, C.J. concurring) (suggesting an attenuated connection between the mootness doctrine and Article III that can be overridden by compelling circumstances). The standing doctrine is an aspect of this case or controversy requirement, *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968), and requires the elimination of claims where "the plaintiff has failed to make out a case or controversy between himself and the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).

■ The defendants claim that the plaintiffs have failed to make out a case or controversy between themselves and the new prison officials and therefore, the case before the Court is moot. The Court disagrees. That the particular individuals representing the Department originally named in the lawsuit have been replaced by other individuals in the same official capacity does not render this case moot. The appropriate inquiry is whether the controversy is *capable* of repetition and not, whether a recurrence of the dispute is more probable than not. *See Honig v. Doe*, 484 U.S. 305, 318, n. 6, 108 S.Ct. 592, 602, n. 6, 98 L.Ed.2d 686 (1988).

A case or controversy clearly existed in 1986 at the trial of this case. The issues on remand—(1) whether the censorship activities of the Florida Department of Corrections in this case violate the inmates' right to freely exercise their religion, and (2) whether the Department's censorship rule violates the procedural due process rights of the in-

mates—are very much alive today because the Department's behavior in this regard is capable of repetition. Logic dictates that a mere change in the Department's personnel does not render this case moot, particularly because the same positions remain open even though filled by different individuals.

Therefore, a case or controversy still exists before the Court today, regardless of the identity of the particular individuals representing the Department. *See Honig, supra; Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Kelly*, 815 F.2d 912 (3d Cir.1987) (action not rendered moot merely by certification of new union as exclusive collective bargaining representative).

Based thereon, the Court concludes that substitution of prison official personnel does not render this case moot and there is no need for further testimony or evidence on this point.

C. DOES THE ADMISSIBLE READING MATERIAL RULE, 33–3.012, FLA. ADMIN. CODE SATISFY MINIMAL DUE PROCESS REQUIREMENTS?

At the trial of this action, the plaintiffs challenged the Admissible Reading Rule, 33–3.012, Fla.Admin.Code (1987) on the ground that it failed in several respects to provide them with adequate procedural due process. This rule provided certain procedures to inform the inmate of the denial of an incoming publication addressed to him or her. *See Lawson v. Wainwright*, 641 F.Supp. at 330.

■ It is well established that the decision to withhold delivery of a particular letter or publication must be accompanied by minimum procedural safeguards. *Procunier v. Martinez*, 416 U.S. 396, 417, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). At trial, the Court had found that the minimal procedural safeguards of *Martinez* were ostensibly provided by the existing regulations. *See Lawson v. Wainwright*, 641 F.Supp. at 330. The

---

**2.** The Court notes that in response to an Order dated September 28, 1993 for the submission of status reports, both parties reported that none of the issues in this case are moot.

Eleventh Circuit, however, was concerned about a deficiency in the procedures "to provide notice and opportunity to the sender to protest the exclusion, and the reasons for the exclusion." *Lawson v. Dugger*, 840 F.2d at 786–87. It therefore remanded the issue to the district court, "for the submission by the [Defendants] of a plan for censoring literature, in accordance with the procedural due process requirements set forth in *Martinez*." *Id.* 840 F.2d at 786.

■ In accordance with the mandate from the Eleventh Circuit, the Defendants submitted a revised censorship rule in 1988. Again, the plaintiffs claim that the regulations were deficient.[3] The proposed 1988 regulations, however, are now moot because they have again been revised; the relevant censorship rule is the Admissible Reading Material Rule, 33–3.012, Fla.Admin.Code, as amended on December 17, 1991. The plaintiffs claim that this rule suffers from the same deficiencies suffered by the proposed 1988 rule. Based upon a careful review of the existing regulations, the Court disagrees with the plaintiffs, and finds that the Admissible Reading Material Rule, 33–3.012, Fla.Admin.Code, as amended on December 17, 1991 satisfies the minimal due process requirements of *Martinez*.[4]

In *Martinez*, the Supreme Court ruled that minimum due process requirements were satisfied where the inmate was notified of the rejection of a letter written by or addressed to him, the author of the letter was given a reasonable opportunity to protest that decision, and the complaints were referred to a prison official other than the person who originally disapproved the correspondence. *Martinez*, 416 U.S. at 418–19, 94 S.Ct. at 1814.

These requirements are satisfied here. The Admissible Reading Material Rule, as amended on December 17, 1991, requires, *inter alia*, written notification to the inmate of a rejection of mail:

(7) The assistant superintendent shall advise the inmate in writing of the reasons for the rejection within 15 days of receipt of the publication and shall provide the publisher or sender with a copy of the rejection notice. Form DC3–621, Request for Admissible Reading Material, shall be used for this purpose....

The Admissible Reading Material Rule (amended December 17, 1991), *supra*, at ¶ 7. It further provides that the publisher or sender of the correspondence may submit written comments for review by the superintendent within 15 days of receipt of the disapproval of the publication and that the superintendent "shall" respond to the publisher or sender within 20 days. *Id.* at ¶ 8(b). Moreover, paragraph 9 provides that the inmate may appeal to the office of the secretary and that the publisher or sender may obtain an independent review of the superintendent's decision by writing to the library services administrator. *Id.* at ¶ 9(a), (b). Thus, the regulations at issue satisfy the procedural safeguards required by *Martinez*. In addition, as can be seen from the particular provisions specified above, the existing regulations adequately address the Eleventh Circuit's concern about providing notice and opportunity to the sender to protest the exclusion, and the reasons for the exclusion.

At the January 4, 1994 hearing, the plaintiffs suggested that the language in the rejection notice (Form DC3–621) should be modified, revised, deleted and/or added in certain specific respects. However, it is not the role of the Court to draft said notice or any portion of the censorship regulations.

---

3. Specifically, the plaintiffs maintain that the revised rule fails to advise the inmates of the name and address of the publisher of the excluded literature; fails to reference the rule authorizing the exclusion; fails to narrow the discretion of the Superintendent in preventing an inmate from reviewing the excluded material as part of the appeal process; fails to advise the publisher of its appeal rights; fails to adopt a form for use in censorship proceedings to insure that all inmates uniformly receive the mandated information; and fails to include an implementation schedule.

See Response to Defendants' Proposed Plan for the Censorship of Religious Literature, file dated July 20, 1988.

4. The Court notes that the content of the Admissible Reading Material Rule, 33–3.012, as amended in 1991, is substantially similar to the censorship procedures in federal prisons, 28 C.F.R. § 540.71 (July 1, 1993 ed.), in all material respects.

So long as the regulations do not violate the due process rights of the inmates, as the Court has so found, they are better left as currently drafted by the State of Florida.

*Conclusion*

In consideration of the above, the Court hereby RE–AFFIRMS and READOPTS the factual findings contained in the Memorandum Decision, dated July 18, 1986, and the conclusions of law contained in the original Final Judgment entered on July 17, 1986, as amended in the Amendment to Final Judgment on July 25, 1986. As explained herein, the censorship of Hebrew Israelite literature by officials of the Florida Department of Corrections constitutes a substantial burden upon the plaintiffs' right to freely exercise their religion in violation of the First Amendment and the Religious Freedom Restoration Act of 1993. There is a viable case or controversy before the Court today. Moreover, the Admissible Reading Material Rule, 33–3.012, Fla.Admin.Code, as amended on December 17, 1991 comports with the minimal procedural due process requirements of the Fourteenth Amendment as set forth in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Any discrete attacks on specific provisions of the Admissible Reading Material Rule on other grounds shall be handled separately in later cases as they arise.

This Amended Final Judgment on Remand is not a limitation of the Court's previous rulings but a reaffirmance, together with all of the legal conclusions reached in the Final Judgment and Amendment thereto, as well as those reached herein, of the original Final Judgment and Amendment thereto. Accordingly, it is ORDERED AND ADJUDGED that:

1. This Court has heretofore in the Final Judgment entered on July 18, 1986, as amended on July 25, 1986, held that the ruling, as amended, applied to the members of the plaintiff class as defined by this Court as follows:

All persons currently confined, or who will be confined in the future, in institutions operated by Florida's Department of Cor-

rections and who are members of, or seek to learn about, the Hebrew Israelite faith and who desire to receive and discuss religious literature prepared by the Temple of Love, and who have been denied the opportunity to receive such religious literature, discuss such religious beliefs with other individuals, and worship according to the tenets of the Hebrew Israelite faith.

*See* Amendment to Final Judgment at ¶ 1 (July 25, 1986). ALL RULINGS HERETO NOTED IN THE FINAL JUDGMENT, THE AMENDMENT TO FINAL JUDGMENT AND HEREIN ARE INTENDED TO, AND DO APPLY TO, ALL MEMBERS OF THE PLAINTIFF CLASS AS DEFINED.

2. The previous practices of the defendants in denying to members of the plaintiff class their rights to freely exercise their religious beliefs during their incarceration in institutions of the Florida Department of Corrections, as fully set out in the Court's Memorandum Opinion, and the defendants' religious freedoms, are hereby DECLARED to have violated, and to continue to violate, the plaintiffs' rights under the First Amendment to the Constitution and the Religious Freedom Restoration Act of 1993.

3. The defendants are hereby enjoined from taking any further actions in violation of the First Amendment rights and RFRA rights of members of the plaintiff class who wish to practice the Hebrew Israelite religion in the state prisons. The defendants are therefore specifically ORDERED:

1. the Hebrew Israelite faith shall be recognized as a *bona fide* religion[5] by the Florida Department of Corrections and by the 44 individuals chaplains (or their successors) employed by the department, who shall afford the Hebrew Israelite inmates the same rights and privileges regarding religious activities that are enjoyed by inmates of other faith.

2. to admit into each state penal institution where an inmate has received, either solicited or unsolicited, by mail or by personal delivery, a copy or copies of any or all of the publications previously identified

---

**5.** In fact, the parties to this class action have stipulated to the fact that the Hebrew Israelite

faith is a *bona fide* religion. *See Lawson v. Wainwright*, 641 F.Supp. at 315.

as Plaintiffs' Exhibits 4, 5, 6, 7, 7A, 8, 9 and 10, subject to reasonable inspection of such books for contraband or weapons.

3. to permit the study of the Hebrew Israelite faith, and the use of chapel facilities for the purpose of such study or prayer by individual inmates or by groups of inmates, provided that no inmate assumes a supervisory or leadership role in such prayer and study session in violation of applicable regulations prohibiting inmates from assuming authority over other inmates.

4. to permit each professing Hebrew Israelite inmate who so desires to wear on his person a religious medallion such as the "Star of David" provided such medallion is legally obtained by the inmate and that it is neither so sharp-edged as to constitute a weapon nor made from contraband material.

5. to afford all requesting inmate members of the class a pork-free diet upon request.

6. to allow all requesting inmate members of the class the opportunity to wear religious headdresses during formal worship services arranged through the prison chaplain and conducted by Temple elders or other authorized leaders.

7. to require individual prison chaplains to undertake reasonable efforts to contact members of the Temple of Love nearest to each prison and to encourage elders of the Hebrew Israelite faith to visit the prisons to hold worship services and pastoral visits.

While some of the foregoing have been adopted as policy by the defendants, implementation of such policy shall henceforth be carried out uniformly through the Florida Department of Corrections.

3. The Admissible Reading Material Rule, 33–3.012, Fla.Amin.Code, as amended on December 17, 1991, satisfies the minimal procedural due process requirements of the Fourteenth Amendment.

4. This Court reserves jurisdiction to enforce the terms hereof and to grant such further relief as to any remaining issues in this case referred to in the original Final Judgment, including the award of attorneys' fees and costs.

5. This Amended Final Judgment on Remand shall and does constitute the Court's complete and final action on remand of the February 1, 1990 Order from the Eleventh Circuit on the merits of the plaintiffs' First Amendment claim under the standards articulated in *Thornburgh* as well as of the Eleventh Circuit's December 21, 1987 Order regarding the Admissible Reading Material Rule.

DONE AND ORDERED.

Samuel Louis Fuller *

Insel Gaitor *

Edward Hinson *

---

* These individuals, along with other inmates currently in the Florida Department of Corrections Institutions, were refused the right to intervene in this case on or about January 13, 1994 on the ground that their intervention motion was untimely filed. *See* Order Denying Motion for Intervention (January 13, 1994). These would-be intervenors are members of the plaintiff class as defined in this case; they simply are not actual litigants herein.