**Lanell B. BESSARD, and Tanella Bridges, on behalf of themselves, and others similarly situated, Plaintiffs,**

v.

**CALIFORNIA COMMUNITY COLLEGES, State of California, and State Center Community College District, Defendants.**

**No. CIV. S–93–1439–WBS/JFM.**

United States District Court, E.D. California.

Oct. 14, 1994.

David C. Anton, Anton and Roeckl, Berkeley, CA, for Lanell B. Bessard and Tenella Bridges.

Marybelle D. Archibald, Atty. General's Office of State of Cal., Sacramento, CA, for California Community Colleges and David Mertes.

Danielle Marie Goeppner, Joseph P. Zampi and Associates, San Diego, CA, for Fresno City College.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

As a condition precedent to employment with defendant State Center Community College District ("the District"), prospective employees are required to indicate their willingness to take the following oath:

> I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

Plaintiffs Bessard and Bridges, both Jehovah's Witnesses, challenge the requirement that they take the oath on the ground that their religion prohibits it. Their challenge comes in the form of claims under the First Amendment to the United States Constitution, § 3(c) of the Religious Freedom Restoration Act of 1993 ("RFRA"), Pub.L. No. 103–141, 42 U.S.C. § 2000bb–1(c), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). Plaintiffs seek monetary, injunctive, and declaratory relief.

Both sides agree that there are no disputed issues of material fact which might require a trial, and have accordingly filed cross-motions for summary judgment. The motions require the court to decide four basic issues:

1. Whether RFRA applies retroactively;

2. Whether plaintiffs' RFRA claims are barred by the statute of limitations;

3. Whether the District is immune from liability under RFRA; and

4. Whether plaintiffs are entitled to summary judgment on their RFRA claims.

For the reasons that follow, the court holds that requiring plaintiffs to take the oath before being considered for employment violated RFRA. Because this case can be decided on statutory grounds, plaintiffs' First Amendment claims need not be reached, and the court expresses no opinion on the merits of these claims. *See Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Tovar v. United States Postal Service*, 3 F.3d 1271,

1272 (9th Cir.1993). Further, the parties informed the court at oral argument that a decision on plaintiffs' RFRA claims obviates the need to consider plaintiffs' other statutory claims. Plaintiffs also informed the court that they would not seek to certify a class under Fed.R.Civ.P. 23. Accordingly, with the exception of issues regarding damages and attorneys fees (which the parties agreed they will attempt to resolve without judicial intervention), this order constitutes a resolution of all of the claims asserted by plaintiffs.

## BACKGROUND

Lanell Bessard and her daughter, Tanella Bridges, are Jehovah's Witnesses. They assert, and defendants do not dispute, that their religion does not permit them to take an oath in which they must swear faith or allegiance to any entity other than God.

At different times, both Bessard and Bridges sought employment with the District. The District is an agency of the State of California. As such, it follows certain state mandated pre-employment procedures, one of which is requiring job applicants to indicate their willingness to take the oath if they are ultimately hired.

The oath the District requires is the first paragraph of the oath set forth in Article XX, Section 3 of the California Constitution. The first paragraph of the oath requires the taker to swear, among other things, to bear "true faith and allegiance" and to "support and defend" the United States and California constitutions. The second paragraph of Section 3 includes an affirmation that the oathtaker is not or has never been a member of an organization that advocates the overthrow of the state or federal government. This paragraph was declared unconstitutional by the California Supreme Court in *Vogel v. County of Los Angeles,* 68 Cal.2d 18, 64 Cal.Rptr. 409, 434 P.2d 961 (1967). The District, accordingly, does not require prospective employees to agree to take or employees to take this portion of the oath.

The District's standard application form cautions applicants that they must answer each and every question and warns that a failure to answer a question will disqualify the applicant from consideration. One of the questions is: "Prior to employment are you willing to: Swear or affirm allegiance to the United States and to the State of California?" Kast Decl.Exh. B at 4.

The first fifty applicants for every job are "screened" by the District. The first step in the screening process is to determine whether the application is complete. If the applicant does not answer the question regarding the oath of allegiance, the applicant will not be considered for the open position.

In May 1992, plaintiff Bridges applied for a position as a bookstore cashier. On her application, Bridges checked the "NO" box after the oath of allegiance question. She did not indicate on her application or inform anyone at the District that she checked "NO" for religious reasons. Thereafter, she received a rejection letter. The District did not learn of Bridges' objections to the oath of allegiance requirement until it received an EEOC charge filed by Bridges in September 1992. In an October 1992 letter to the EEOC, counsel for the District wrote that Bridges "was not considered for employment as a bookstore clerk [because] she stated on her application that she could not sign a loyalty oath due to her religious tenants [sic]." Anton Decl.Ex. C at 2.

Plaintiff Bessard's situation is somewhat more involved. In March 1992, Bessard began working for the District as a temporary employee hired through an agency. Bessard asserts that she applied for a full-time position with the District in April 1992. The District contends that she did not. Moreover, the District asserts that Bessard never mentioned the alleged April 1992 application to the EEOC and the denial of that application was not noted on Bessard's EEOC charge. Bessard states that she did tell the EEOC of the April 1992 application, but concedes that the EEOC charge does not include any mention of it.

All agree that Bessard applied for a position as a department secretary in June 1992. Bessard did not answer the question on the application regarding the oath of allegiance because, she asserts, she believed that the answer dictated by her religious beliefs— "no"—would have disqualified her from fur-

ther consideration. The parties dispute whether Bessard's June application was complete in other respects: the District contends that she did not include the required typing certificate and Bessard contends that she did. The District screened out the application because the oath of allegiance question was not answered and, it claims, the typing certificate was not included. Bessard did not contact anyone at the District to voice her concerns regarding her rejection.

In August 1992, Bessard filed another application, this time for a part-time clerical position. According to the District, the position paid $6.75 per hour and did not offer benefits. Bessard claims that the position offered workers' compensation, disability, and medical leave benefits. The District asserts that the application was rejected because Bessard did not answer the oath question, did not indicate marital status on her W–4 form, and again did not provide the typing certificate. Bessard responds that she was not required by the District, this time, to go through the formal application process (which required the typing certificate and the W–4 form) and was rejected only because of the oath of allegiance.

After this rejection, Bessard contacted the District's Director of Personnel and informed him that she could not take the oath as written. She submitted an alternative oath which did not include the "true faith and allegiance" or the "support and defend" language. The personnel office informed her that the District could not accept a modified oath.

In September 1992, both Bessard. and Bridges filed EEOC charges against the District on the ground that they were discriminated against on the basis of their religion. Unable to resolve the matter through the EEOC, they filed this action on September 7, 1993. The court has jurisdiction under 28 U.S.C. § 1331.

## DISCUSSION

### I. *Summary Judgment Standard*

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment initially must identify for the court those portions of the materials on file that it believes show the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quoting Fed.R.Civ.P. 56(e)). The court must construe the evidence and resolve all inferences in favor of the nonmoving party. *Id.* at 630–31.

Summary judgment shall be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 321, 106 S.Ct. at 2552. The question for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

In this case the essential facts are undisputed. Bridges' application was not considered because she would not agree to take the loyalty oath. Bessard was not hired by the District at least in part because she also refused to agree to take the oath. Both Bridges' and Bessard's religious beliefs forbid them to swear faith and allegiance to the state.

### II. *Analysis*

#### A. *Retroactivity*

■ Both defendants argue that RFRA was not intended to apply retroactively and, therefore, does not apply in this case. Plaintiffs complain of events occurring in 1992. RFRA became law on November 16, 1993.

■ "[T]here exists a judicial presumption, of great antiquity, that a legislative enactment affecting substantive rights does not apply retroactively absent *a clear statement* to the contrary." *Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1522, 128 L.Ed.2d 274 (1994) (Scalia, J., concurring in the result) (emphasis in original). Thus, the courts may not construe a federal statute to have retroactive effect unless the language used by Congress in the statute clearly requires such a result. *Landgraf v. USI Film Prods.,* —— U.S. ——, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994); *cf. Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 1472, 102 L.Ed.2d 493 (1988).

> Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.

*Landgraf,* —— U.S. at ——, 114 S.Ct. at 1501. In neither *Rivers* nor *Landgraf* did the Supreme Court prescribe specific language Congress must use to give a statute retroactive effect.

RFRA contains a provision that expressly addresses its temporal application. It states:

> This chapter applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993. 42 U.S.C. § 2000bb–3(a).

By its clear terms, RFRA applies to all Federal and State law, and the *implementation of that law,* whether adopted before or after November 16, 1993. By including the word "implementation," Congress clearly intended RFRA to apply to all laws *and* all acts implementing those laws prior to RFRA's enactment. To hold otherwise would be to read the word "implementation" out of § 2000bb–3. "While [RFRA] does not use the actual term 'retroactive,' it is abundantly

clear from the language that it applies" to acts and omissions by state actors which took place before its effective date. *Lawson v. Dugger,* 844 F.Supp. 1538, 1542 (S.D.Fla. 1994).

Every published federal decision to consider the issue holds RFRA completely retroactive. *Brown–El v. Harris,* 26 F.3d 68, 69 (8th Cir.1994) (dicta); *Boone v. Comm. of Prisons,* No. 93–5074, 1994 WL 383590, 1994 U.S.Dist. LEXIS 10027, at \*20 (E.D.Pa. July 21, 1994); *Rust v. Clarke,* 851 F.Supp. 377, 380 (D.Neb.1994) (dicta); *Allah v. Menei,* 844 F.Supp. 1056, 1061 n. 15 (E.D.Pa.1994); *Lawson v. Dugger,* 844 F.Supp. at 1542. Further, a number of cases have applied RFRA to pre-enactment acts without specifically addressing the retroactivity issue. *Western Presbyterian Church v. Board of Zoning Adjustment,* 862 F.Supp. 538 (D.D.C. 1994); *Powell v. Stafford,* 859 F.Supp. 1343 (D.Col.1994); *Campos v. Coughlin,* 854 F.Supp. 194 (S.D.N.Y.1994). Defendants cite no cases to the contrary.

The clarity of the statutory language, buttressed by the unanimity of the courts on the issue of retroactivity, convinces the court that RFRA is to be applied retroactively.

## B. *Statute of Limitations*

The District moves for summary judgment on the ground that plaintiffs' RFRA claims were not timely filed. RFRA does not contain a specific statute of limitations—" 'a void which is commonplace in federal statutory law.'" *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980)). The question of the proper statute of limitations for RFRA claims is one of first impression.

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Id.* at 266–67, 105 S.Ct. at 1942. With respect to actions arising under Title 42 of the United States Code, 42 U.S.C. § 1988(a) controls the process of selecting rules of

decision not provided by Congress. The Supreme Court has deduced from § 1988(a) a three step process:

First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the statute in question] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984) (citations omitted).

■ Since RFRA does not provide a statute of limitations, the court begins with the second step. *Cf. Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942–43. In order to determine the "most appropriate" or "most analogous" California statute of limitations, the court must answer three questions: (1) "whether state law or federal law governs the characterization of a [RFRA] claim for statute of limitations purposes;" (2) if federal law applies, whether all RFRA "claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case;" and (3) the court must "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." *Id.* at 268, 105 S.Ct. at 1942–43.

■ The first two questions are easily answered. First, federal law applies in characterizing RFRA claims: like the characterization of § 1983 claims, the characterization of RFRA claims "for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it." *Id.*

■ Second, all RFRA claims should be characterized in the same way for statute of limitations purposes. In § 1988, the *Wilson* Court found that Congress intended "the

identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers, and litigants, rather than a source of uncertainty, and unproductive and ever-increasing litigation." *Id.* at 275, 105 S.Ct. at 1946. RFRA claims all raise the same essential issues: whether the application of a law substantially burdens the free exercise of religion and, if so, whether the law is narrowly tailored to serve a compelling state interest. Because the legal issues in every RFRA case will be the same, and in the interest of "uniformity, certainty, and the minimazation of unnecessary litigation," *id.,* all RFRA claims should be characterized the same way.

■ This leaves the final step: the court "must characterize the essence of the claim ... and decide which state statute provides the most appropriate limiting principle." *Id.* at 268, 105 S.Ct. at 1942–43. In *Wilson,* the Supreme Court concluded that claims under § 1983 are most appropriately governed by the forum state's personal injury statute of limitations. The Court found that the "specific historical catalyst for the Civil Rights Act of 1871 [now codified as § 1983] was the campaign of violence and deception in the South, fomented by the Ku Klux Klan, which was denying decent citizens their civil and political rights." *Id.* at 276, 105 S.Ct. at 1947. These "atrocities" "plainly sounded in tort," and specifically in tort against the person. *Id.* at 277, 105 S.Ct. at 1947.

In reaching this conclusion, the Court looked to the language of the Fourteenth Amendment. "The unifying theme of [§ 1983] is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *'person'* subject to the jurisdiction of any of the several states." *Id.* A violation of the commands of the Fourteenth Amendment, the Court found, "is an injury to the individual rights of the person." *Id.* And, the court concluded, had the 42d Congress "expressly focused" on the issue of the statute of limitations, "it would have characterized § 1983 as conferring a general remedy for injuries to personal rights." *Id.* at 278, 105 S.Ct. at 1948.

In adopting personal injury statutes of limitations for § 1983 claims, the Supreme

Court expressly rejected "catchall" periods of limitations contained in state codes. Catchall provisions like California's provide the statute of limitations for, among other actions, "action(s) upon a liability created by statute, other than a penalty or forfeiture." Cal.Civ. Proc.Code § 338(a). "Section 1983," the Court wrote, "of course, is a statute, *but it only provides a remedy and does not itself create any substantive rights.*" 471 U.S. at 278, 105 S.Ct. at 1948 (emphasis added). The Court reasoned that the rights protected under § 1983 are guaranteed by the Fourteenth Amendment: "These guarantees of liberty are among the rights possessed by every individual in a civilized society, and not privileges extended to the people by the legislature." *Id.* at 278–79, 105 S.Ct. at 1948.

Applying the *Wilson* analysis to this case, the court finds that California's catchall statute of limitations, rather than its personal injury provision, is the most appropriate statute of limitations to apply to RFRA claims. In passing RFRA, Congress was not motivated by "atrocities" closely analogous to common law torts against the person. The motivation of the 103d Congress was the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which held that the Free Exercise Clause permits the state to prohibit sacramental drug use and thus to deny unemployment benefits to people discharged for such use. 42 U.S.C. § 2000bb(a)(4). Congress disagreed and legislated a change. "The Religious Freedom Restoration Act of 1993 is intended to restore the compelling interest test previously applicable to free exercise cases by requiring *government actions that substantially burden the exercise of religion* be demonstrated to be the least restrictive means of furthering a compelling government interest." S.Rep. No. 111, 103d Cong., 1st Sess. 8 (1993) (emphasis added), *reprinted in* 1993

U.S.C.C.A.N. 1892, 1898. In response to *Employment Division,* the specific targets of RFRA are facially neutral "government actions that substantially burden the exercise of religion." This assuredly does not sound in common law tort.

Moreover, the "unifying theme" of RFRA is the First, not the Fourteenth, Amendment. The First Amendment focuses not on the individual rights of the *person,* but on the enactments of the legislature: *"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;* ....."[1] This primary focus on actions by legislatures further convinces the court that a personal injury statute of limitations is not the "most appropriate" state statute to apply to RFRA.

The catchall statute of limitations applies to "action(s) upon a liability created by statute." Cal.Civ.Proc.Code § 338(a). In contrast to § 1983, RFRA *creates* a substantive right that the Supreme Court expressly held in *Employment Division v. Smith* not to be guaranteed by the First Amendment. "A person whose religious exercise has been burdened *in violation of this section* may assert that violation *as a claim* or defense in a judicial proceeding and obtain appropriate relief." 42 U.S.C. § 2000bb–1(c) (emphasis added). Actions brought under RFRA are thus brought "upon a liability created by" RFRA and are therefore covered by § 338(a).

In sum, the "most appropriate" or "most analogous" state statute of limitations is California's catchall statute of limitations. Under that statute, an action must be commenced within three years after it accrues. Cal.Civ.Proc.Code § 338. Since it is undisputed that plaintiffs commenced this action within three years after it accrued, the District's motion for summary judgment on statute of limitations grounds will be denied.[2]

---

1. This prohibition reaches state legislatures through the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 148 & n. 5, 88 S.Ct. 1444, 1446–47 & n. 5, 20 L.Ed.2d 491 (1968).

2. If the court were to apply a one year statute of limitations, as urged by defendants, plaintiffs contend that the continuing violation doctrine

articulated in *EEOC v. Local 350, Plumbers & Pipefitters,* 998 F.2d 641, 643–45 (9th Cir.1992), and *Green v. Los Angeles County Supt. of Schools,* 883 F.2d 1472, 1480–81 (9th Cir.1989), would apply. Because the court holds that the three year statute of limitations applies, the continuing violation doctrine need not be reached.

## C. *Immunity*

■ The District contends that it is entitled to qualified immunity from plaintiffs' RFRA claims. As a preliminary matter, it is not clear that the doctrine of qualified immunity applies to RFRA actions and the parties have not addressed this issue.

Even if the doctrine may be invoked against RFRA claims, it protects only individuals, not governmental entities. *Owen v. City of Independence*, 445 U.S. 622, 650, 657, 100 S.Ct. 1398, 1415, 1418–19, 63 L.Ed.2d 673 (1980). In this case there are no individual defendants. Accordingly, the District is not entitled to qualified immunity.

## D. *Plaintiffs' Motion for Summary Judgment on the Merits of Their RFRA Claims*

■ Under RFRA, the government "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b). This simple "strict scrutiny" test is well established. In applying this test the court is to look to Free Exercise Clause decisions of the Supreme Court prior to its decision in *Employment Division v. Smith.* 42 U.S.C. § 2000bb(b)(1); S.Rep. No. 103–111 at 8–9. Specifically, as a matter of statutory—not constitutional—law, RFRA restores the compelling interest test set forth by the Court in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). 42 U.S.C. § 2000bb(b)(1).

In this case the court must decide three questions: (1) whether requiring applicants to agree to take the loyalty oath as a condition precedent to consideration for employment substantially burdened the exercise of plaintiffs' religion; (2) if so, whether defendants had a compelling interest in requiring the loyalty oath; and (3) if so, whether the required oath is the least restrictive means available to further the compelling interest.

## 1. *Substantial Burden*

■ The Supreme Court has described "substantial burden" as follows:

Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Thomas v. Review Bd., Indiana Employment Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *see Vernon v. City of Los Angeles,* 27 F.3d 1385 (9th Cir.1994), *petition for cert. filed* Sept. 21, 1994. The interference with the adherent's religious beliefs "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Graham v. C.I.R.,* 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom., Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1989).

■ Plaintiffs have provided evidence that taking the oath would offend a central tenet of their religion. Specifically, the requirement that applicants for employment agree to "bear true faith and allegiance" to the state and federal constitutions contravenes plaintiffs' sincerely held belief that they must bear faith and allegiance to God alone. Defendants do not dispute this fact. Defendants instead argue that (a) plaintiffs have no "vested right" to be employed by the District, and (b) plaintiffs were never coerced into taking the oath. Neither proposition has merit.

■ Whether plaintiffs have a "vested right" to employment with the District or the State is not relevant. The Supreme Court has held in several cases that a federal or state requirement burdens a constitutional right even though the plaintiff was not constitutionally entitled to the benefit he or she sought. For example, although children do not have a constitutional right to a free public education, *see San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297–98, 36 L.Ed.2d 16 (1973), the state

may not condition access to a public education on an act that violates a minor-student's First Amendment rights, *West Virginia Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

Similarly, while no case holds that Americans have a "vested right" to hold public offices or to become members of the bar, the state may not place an unconstitutional burden on a person's First Amendment rights as a condition precedent to taking public office or joining the bar of a state. *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (holding that state could not bar clergy from holding public office); *Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971) (holding that applicant to state bar was not required to answer questions regarding prior political associations); *Elfbrandt v. Russell,* 384 U.S. 11, 19, 86 S.Ct. 1238, 1242, 16 L.Ed.2d 321 (1966); *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (holding that state could not require statement of belief in God as condition precedent to obtaining notary commission). In *Rutan v. Republican Party,* 497 U.S. 62, 76–77, 110 S.Ct. 2729, 2738, 111 L.Ed.2d 52 (1990), the Court wrote that it had premised its holding in *Torcaso v. Watkins, supra,* "on our understanding that loss of a job opportunity for failure to compromise one's convictions states a constitutional claim." The court further observed that

> A state job is valuable. Like most employment, it provides regular paychecks, health insurance, and other benefits. In addition, there may be openings with the State when business in the private sector is slow. There are also occupations for which the government is a major (or the only) source of employment, such as social workers, elementary school teachers, and prison guards. Thus, denial of a state job is a serious privation.

*Id.*

The Court has "made clear that neither federal nor state government may condition employment on taking oaths that impinge on rights guaranteed by the First and Fourteenth Amendments respectively, as for example those relating to political beliefs."

*Cole v. Richardson,* 405 U.S. 676, 680, 92 S.Ct. 1332, 1335, 31 L.Ed.2d 593 (1972). Although the oath requirement at issue in *Cole* survived constitutional challenge, the Court's decision did not turn on the fact that the plaintiff had no "right" to public employment.

In a line of cases the Supreme Court has also held that unemployment benefits may not be withheld by the state if the unemployed person quit or was fired because the required work breached his or her religious tenets. *Hobbie v. Unemployment Appeals Comm'n of Florida,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Thomas,* 450 U.S. at 707, 101 S.Ct. at 1425; *Sherbert,* 374 U.S. at 398, 83 S.Ct. at 1790. The unemployed have a "vested right" to unemployment benefits only if they qualify under state law. In each of these cases, state administrative bodies or courts found that, under state law, the unemployed petitioners did not qualify for benefits because the petitioners' own decisions regarding their religious beliefs led to their termination. Thus it cannot be said, as defendants argue, that in those cases the petitioners had a "vested right" to benefits—only the eventual decisions of the Supreme Court applying federal constitutional principles required the states to allow the petitioners' to participate in the benefits programs.

Here, plaintiffs may not have a "right" to public employment. Nevertheless, requiring them to agree to take an oath that violates their religious tenets as a condition to being considered for public employment places an undue burden on their right of free exercise. It forces plaintiffs "to choose between following the precepts of [their] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [their] religion in order to accept work, on the other hand." *Sherbert,* 374 U.S. at 404, 83 S.Ct. at 1794.

■ Defendants' contention that plaintiffs were not "coerced" into taking the oath is also without merit. The rule is that the state may not "pressure" a religious adherent to violate her beliefs. *Thomas,* 450 U.S. at 717–18, 101 S.Ct. at 1432. "While the compulsion may be indirect, the infringement upon free exercise is nonetheless substan-

tial." *Id.* As Justice Jackson wrote in *Barnette:*

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by work or act their faith therein.

319 U.S. at 642, 63 S.Ct. at 1187.

Although plaintiffs were not physically forced to take the loyalty oath, defendants conditioned consideration of plaintiffs' employment application on taking the oath. Just as the employees in *Hobbie, Thomas,* and *Sherbert* were not "forced" to work in violation of their religious beliefs, and the plaintiffs in *Torcaso, Baird,* and *McDaniel* were not "forced" to take the oaths required in those cases, plaintiffs here were not "forced" to take the oath required by the District.

### 2. Compelling State Interest and Least Restrictive Means of Furthering that Interest

Under RFRA, once the plaintiff shows a substantial burden on her exercise of religion, the burden shifts to the defendant to demonstrate that the application of the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(b).

■ Defendants suggest two compelling interests. First, the District contends that it has a compelling interest in following the state law that requires employees to take the loyalty oath.[3] This is not a "compelling state interest." If it were, every state law would be immune from attack under federal statutes or the federal constitution because only the entities or individuals who carry out those laws may be sued. "Th[e] Constitution, and the Laws of the United States

which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land...." U.S. Const. art. VI. Allowing state actors to escape liability by claiming that they have a "compelling state interest" in implementing a state law that violates federal law would make the Supremacy Clause hollow indeed.[4]

Second, both defendants contend that they have a compelling interest in ensuring employee loyalty and trustworthiness. Although they cite no authority for this proposition, the court has no reason to doubt that, in the abstract, this is an interest shared by every employer. However, the court seriously questions whether an oath in any form can achieve employee loyalty. The Supreme Court has observed that "[a] person gets from a symbol the meaning he puts into it, and what is one man's comfort and inspiration is another's jest and scorn." *Barnette,* 319 U.S. at 633, 63 S.Ct. at 1183. In the same case, Justice Black put it more strongly,

> Words uttered under coercion are proof of loyalty to nothing but self-interest. Love of country must spring from willing hearts and free minds, inspired by a fair administration of wise laws enacted by the people's elected representatives within the bounds of express constitutional prohibitions....
>
> The ceremonial, when enforced against the conscientious objectors, more likely to defeat than to serve its high purpose, is a handy implement for disguised religious persecution.

*Id.* at 644, 63 S.Ct. at 1188 (Black, J., concurring). There is no evidence in this record that taking a loyalty oath makes a disloyal employee more loyal.

■ Even if ensuring employee loyalty and trustworthiness is a compelling state interest, however, defendants have not demonstrated that the loyalty oath required is the

---

**3.** The court notes that the District has not cited a single case, and the court has not found one independently, wherein a state employee was disciplined in any fashion for failing to administer the loyalty oath. Nor is the court satisfied that there is any mechanism within state government for investigating or prosecuting such a case.

**4.** The point raised by the District regarding its culpability may have more weight in deciding what remedies are appropriate in this case. *See* 42 U.S.C. § 2000bb–1(c) (a successful RFRA plaintiff may obtain "appropriate relief against the government").

"least restrictive means of furthering that" interest. The District does not address this facet of its burden at all, and the State simply contends "that there is no provision in the California law which permits a modification of the loyalty oath." State Mem. Opp. at 5. If this position were adopted, any requirement imposed by state law would be insulated from federal judicial review.

Although it is not their burden to do so, plaintiffs suggest a less restrictive alternative. Simply stated, defendants could require an oath in which the taker must swear to *act* loyally. This sort of oath was upheld by the Supreme Court in *Cole v. Richardson,* 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972).[5] As plaintiffs point out, from 1849 to 1952 the California oath required only that the taker swear to "support" the state and federal constitutions and to "faithfully discharge the duties of the office" he or she was to occupy. Defendants present no evidence that this oath, directed as it was to actions rather than beliefs, was any less effective than the present oath in ensuring employee loyalty.

Like a private employer, if the government finds an employee to be acting disloyally, the employee may be disciplined. Similarly, if employees act loyally, they may be rewarded by promotion or other benefits. These certainly are less restrictive means of furthering the goal of having a loyal workforce.

In sum, the court concludes that plaintiffs have shown that the oath requirement imposes a substantial burden on their exercise of religion. Defendants, in turn, have not demonstrated that the oath requirement is the least restrictive means of furthering a compelling state interest. Accordingly, plaintiffs' motion for summary judgment on their RFRA claims will be granted.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment on plaintiffs' Religious Freedom Restoration Act claims be, and the same are, hereby DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment on their Religious Freedom Restoration Act claims be, and the same are, hereby GRANTED.

DEFENDANTS ARE HEREBY ENJOINED from requiring plaintiffs to take the oath in its present form as a precondition of employment.

---

**5.** The oath at issue in *Cole* stated:
   I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method.
   405 U.S. at 677–78.