PEOPLE v SWARTZENTRUBER

VILLAGE OF BEAVERTON v TROYER

CITY OF GLADWIN v GINGERICH

Docket Nos. 98543, 98544, 98545. Submitted April 12, 1988, at Grand Rapids. Decided August 16, 1988. Leave to appeal applied for.

Jerry M. Swartzentruber was ticketed by the state police for driving a horse-drawn corn binder without displaying a slow-moving vehicle emblem on his vehicle. Henry E. Troyer was ticketed by a Village of Beaverton police officer for driving a horse-drawn wagon without displaying a slow-moving vehicle emblem. Amos P. Gingerich was ticketed by a City of Gladwin police officer for driving a horse-drawn black buggy without displaying a slow-moving vehicle emblem. State law requires that all vehicles with a maximum potential speed of twenty-five miles per hour display a reflective device which is an equilateral triangle in shape, at least sixteen inches wide at the base and at least fourteen inches in height, of yellow-orange fluorescent material and with a red border of highly reflective beaded material. The three cases were consolidated for hearing in 80th District Court. The defendants, all members of the Old Order Amish religion, conceded that they violated the statute, but argued that enforcement of the statute against them would infringe upon their rights under the free exercise clause of the First Amendment to the United States Constitution and under the Michigan Constitution. Eli Troyer testified on behalf of defendants as to the objections the Amish have to the statutorily required emblem. The state offered no proofs. The court, noting the state's lack of proofs, concluded that there appeared to be no state interest of sufficient magnitude to override the defendants' interest under the free exercise clause and denied enforcement of the statute against defendants. The Gladwin Circuit Court, Raymond L. King, J., on appeal reversed the district court's opinion, reasoning that the compelling state interest of road safety justified the incidental burden placed on

REFERENCES

Am Jur 2d, Constitutional Law §§ 464 *et seq.*

Supreme Court's cases involving establishment and freedom of religion clauses of Federal Constitution. 37 L Ed 2d 1147.

defendants' free exercise of religion. Defendants sought leave to appeal to the Court of Appeals, which denied leave. Defendants then sought leave to appeal to the Supreme Court, which, in lieu of granting leave, remanded to the Court of Appeals for consideration as on leave granted. 428 Mich 860 (1987).

The Court of Appeals *held:*

1. The statute at issue imposes a burden on the free exercise of defendants' religion by requiring them to act at odds with fundamental tenets of their religious beliefs, on pain of legal penalty. The state's interest in its regulation therefore must be justified by a compelling state interest to overcome defendants' claim of protection under the United States and Michigan Constitutions. The state has failed to offer proof of a compelling state interest which would override the imposition placed on defendants' free exercise rights. The decision of the circuit court is reversed.

2. It cannot be held as a matter of law in this case that defendants' proposed alternative to the slow-moving vehicle emblem, i.e., the use of reflector tape and red lanterns for nighttime travel, would satisfy the problem addressed by the statute.

Reversed.

Constitutional Law — Freedom of Religion — Compelling State Interest.

A claim asserting the protection of the free exercise of religion clauses of the United States and Michigan Constitutions as against some form of government regulation must be analyzed by the use of what is essentially a balancing test: first, it must be shown that the conduct for which constitutional protection is claimed is based in religious belief, and then it must be determined whether the state regulation imposes any burden on the free exercise of the claimants' religion; to overcome a claim of protection under the free exercise clauses, the state must prove that its regulation is justified by a compelling state interest, i.e., one of sufficient magnitude to override the interest for which protection is claimed under the free exercise clauses (US Const, Am I; Const 1963, art 1, § 4).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Douglas A. Jacobson,* Prosecuting Attorney, for the State of Michigan and the City of Gladwin.

*Paul J. Pemberton,* for Village of Beaverton.

*Dreyer & McLaughlin* (by *David J. Dreyer*), and *William Bentley Ball,* for defendants.

Before: Shepherd, P.J., and Sawyer and K. MacDonald,* JJ.

Shepherd, P.J. Defendants appeal an opinion and order of the Gladwin Circuit Court enforcing traffic violation tickets issued to defendants for failure to display the slow-moving vehicle (smv) emblem on their horse-drawn vehicles pursuant to statute. MCL 257.688; MSA 9.2388. We reverse.

Defendants are all members of the Old Order Amish religion. Defendants were ticketed in October, 1980, for failure to display a smv emblem. The statute requires that all vehicles with a maximum potential speed of twenty-five miles per hour display a "reflective device" which is an equilateral triangle in shape, at least sixteen inches wide at the base and at least fourteen inches in height, of yellow-orange fluorescent material and with a red border of highly reflective beaded material. Defendant Troyer was ticketed by a Beaverton police officer while driving a horse-drawn wagon. Defendant Swartzentruber was ticketed by the state police while driving a horse-drawn corn binder. Defendant Gingerich was ticketed by a Gladwin city police officer while driving a horse-drawn, black buggy.

The cases were consolidated and a formal hearing was conducted in 80th District Court on November 19, 1980. Defendants conceded the violations but argued that enforcement of the statute as against them as Old Order Amish would infringe upon their rights under the free exercise clause of the First Amendment to the United

* Circuit judge, sitting on the Court of Appeals by assignment.

States Constitution and Michigan Constitution 1963, art 1, § 4.

Eli Troyer, a member of the Amish group located in Gladwin, testified. His testimony related to the objections the Amish have to the SMV emblem. He indicated that the Amish attempt to lead a humble and plain way of life. The principal thrust of his testimony was that forcing the Amish to display the SMV emblem would mean the Amish were trusting in the symbols of man rather than trusting in the protection of God. Complying with the statute would amount to an abandonment of this trust in violation of their religious beliefs. He also indicated that their religious beliefs require them to drive "plain" horse-drawn buggies, not only for everyday travel but also to religious services. The group objected to both the triangular symbol and the loud color of the emblem.

Troyer further testified that, when a similar statute was passed in Ohio, the Amish were accommodated by being allowed to take other visibility safety measures. The Ohio Department of Highway Safety has issued regulations allowing the Amish to use reflector tape and lanterns as a means of maintaining safety for nighttime travel.

The state offered no proofs.

Acting in reliance on *Wisconsin v Yoder,* 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972), the district court issued an opinion and order on January 29, 1981, denying enforcement of the statute against defendants. Noting the state's lack of proofs, the court, quoting from *Yoder,* p 214, concluded that there appeared to be no " 'state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause.' " The circuit court reversed in an opinion dated January 14, 1985. The court reasoned that "when the practice of one's religion conflicts with

the public interest, the rights of the few must give way to the rights of the rest of society," citing *Reynolds v United States,* 98 US 145; 25 L Ed 244 (1878). The court ruled that the state could "regulate religious actions which violate social duties or are subversive of good order." The court distinguished *Yoder* on its facts. The court ruled that the "compelling state interest" of road safety justified the "incidental burden" placed on defendants' free exercise of religion.

Defendants filed an application for leave to appeal to this Court, which was denied on May 2, 1985. Defendants appealed to the Supreme Court. Our Supreme Court remanded to this Court to consider the matter as on leave granted. 428 Mich 860 (1987). We now reverse. We hold that the state has not shown by competent proofs a compelling interest sufficient to override defendants' rights under the free exercise clause.

I

The First Amendment to the United States Constitution provides that Congress shall make no law "prohibiting the free exercise" of religion. The free exercise clause is said to embrace two concepts: "freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v Connecticut,* 310 US 296, 303-304; 60 S Ct 900; 84 L Ed 1213 (1940).

In analyzing claims asserting the protection of the free exercise clause as against some form of government regulation the Supreme Court has adopted what is essentially a balancing test. First it must be shown that the conduct claiming First Amendment protection is based in religious belief.

"A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation . . . if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief." *Yoder, supra,* p 215.

In the instant case, that the claim of the Amish is religiously rooted is not seriously challenged. Troyer, representative for the group, testified that the objection to the smv emblem is a matter of religious conviction shared by not only the group in Gladwin, but Old Order Amish in Ohio as well. The conflict arises from the symbolic effect of the smv's emblem on the religiously rooted "plain" and "humble" life style of these Old Order Amish defendants. The evidence clearly indicates that the conduct is rooted in religious belief. *Yoder, supra.*

II

It next must be determined whether the state regulation imposes "any burden on the free exercise" of defendants' religion. *Sherbert v Verner,* 374 US 398, 403; 83 S Ct 1790; 10 L Ed 2d 965 (1963); *Yoder, supra,* p 218. "A regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Yoder,* p 220.

In the face of free exercise clause challenges this Court has previously upheld statutes having an indirect financial or regulatory effect on a purely secular activity. See e.g. *DSS v Emmanuel Baptist Pre-School,* 150 Mich App 254; 388 NW2d 326 (1986), lv gtd 428 Mich 909 (1987) (church-affiliated day care center required to comply with day care licensing procedures); *Hough v North Star Baptist Church,* 109 Mich App 780; 312 NW2d 158 (1981)

(building code regulations applied to church school building).

We think it is clear in this case that the statute requires of defendants an act "at odds with fundamental tenets of their religious beliefs" on pain of legal penalty. *Yoder,* p 218. Unless defendants place the smv emblem on their vehicles they will be ticketed and fined.

### III

To overcome a claim of protection under the free exercise clause the state must prove that its regulation is justified by a "compelling state interest." *Sherbert, supra,* p 403. The state interest must be "of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Yoder, supra,* p 214.

In *Yoder,* the State of Wisconsin sought to enforce its statute requiring compulsory school attendance until the age of sixteen against several Amish parents and children. The state argued that its interest in the education of the state's children was so great that it overcame the acknowledged burden on defendants' free exercise rights. The Supreme Court rejected the state's argument. "Where fundamental claims of religious freedom are at stake, however, we cannot accept such a sweeping claim; despite its admitted validity in the generality of cases, we must searchingly examine the interests that the State seeks to promote . . . and the impediment to those objectives that would flow from recognizing the claimed Amish exemption." *Yoder,* p 221. We are aware that many citizens might view defendants' objections to the instant statute as trivial at best, meaningless at worst. However, we agree with the statement of Justice Brennan: "For religious freedom—the free-

dom to believe and to practice strange and, it may be, foreign creeds—has classically been one of the highest values of our society." *Braunfeld v Brown,* 366 US 599, 612; 81 S Ct 1144; 6 L Ed 2d 563 (1961) (Brennan, J., dissenting).

Presumably, the state interest in question here is public safety. As a general matter we do not quarrel with the proposition that a law designed to warn drivers of slow-moving vehicles is useful to public safety. But where defendants argue for an exemption based on the free exercise clause, the constitution requires more than general propositions in support of a perceived state interest. Apparently concluding that the state's interest in the specific triangular sign was self-evident, the state offered no proofs whatsoever to tie the substance of the statute to what presumably it contends is its rationale: heightened public safety.

No evidence was offered to suggest that fewer accidents have been reported between slow-moving vehicles displaying the bright orange emblem and those not displaying the emblem. No evidence was offered to suggest that a horse-drawn, black buggy was less visible to approaching traffic than a vehicle displaying the emblem during daylight hours. The state chose not to refute the validity of the proposal offered by the Amish to display reflector tape and red lanterns as an alternative to the emblem for night travel, as has been accepted by the State of Ohio. No evidence was offered to suggest that the alternative is less visible or less safe, both for the Amish and for other vehicular traffic.

On appeal, the state argues that its goal in enacting the statute was to create one immediately recognizable symbol, the sight of which would immediately alert drivers when approaching a slow-moving vehicle. The state asks us essen-

tially to take "judicial notice" of the fact that the state's drivers have adopted a "conditioned reflex" to the emblem and begin to slow down even before they consciously begin to "see" the sign. "Precious seconds" will elapse if the Amish's alternative is adopted, resulting in more serious accidents. As an appellate court, we are in no position to take judicial notice of facts more properly the subject of trial proofs. The state argues that it has been "remarkably effective" in generating recognition of the emblem. That proposition is open to question. We do not mean to suggest that the state must come forward with proofs indicating that a certain percentage of Michigan drivers now recognize the emblem. Rather, we note the statement as one of a series of statements made without the slightest basis in the record.

We can only echo the district court when it said "[t]here appears to be no 'state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause.' *Wisconsin v Yoder, supra,* p 214. In other words, the State has not argued to this Court a substantial traffic hazard or an increase in accidents involving horse drawn vehicles; the local Amish have consented to conformance to requirements set in the State of Ohio." We therefore find that the state has failed to come forward with proof in court of a compelling state interest such as to override the imposition placed on defendants' free exercise rights.

We wish to emphasize that this opinion is based upon the state's failure to come forward with evidence at trial in support of its position in the three cases before us. In a First Amendment case the burden of the state is a heavy one once a defendant has put forward a facially reasonable alternative to a legitimate state interest. Here the

state did nothing to meet this burden. In a proper case where the state presents appropriate evidence and a trial court makes findings that are supported by the evidence, another panel of an appellate court might hold otherwise. On the other hand, if the state presents its evidence in another case and the evidence fails to support its position, an appellate panel might conclude that all of the available evidence does not rise to the level of overcoming the First Amendment rights of a defendant. Thereafter the trial courts would be required to enforce or refuse to enforce the statute, as the case may be, as to all persons similarly situated. In these cases we reverse the decision of the circuit court and decline enforcement of the tickets as against these defendants. In future cases if the state does nothing more than rely on the statute in the face of the proposed alternative, traffic citations may not be enforced.

Defendants would obviously prefer us to hold that their proposed alternative is valid as a matter of law. We are not able to go that far. The statute is valid on its face, as is the alternative. The final resolution of the issue of whether the alternative effectively satisfies the problem addressed by the statute is a matter of proof in another case. These cases may not be retried.

Reversed.