STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Emanuel D. MILLER, Enos S. Hershberger, David E. Yoder, Eli M. Zook, Eli E. Swartzentruber, Eli J. Zook, Levi E. Yoder and Jacob J.D. Hershberger, Defendants-Appellants,

UNITED STATES of America, Defendant-Appellant-Respondent.

Supreme Court

*No. 94–0159. Oral argument May 29, 1996.—Decided June 19, 1996.*

(Also reported in 549 N.W.2d 235.)

For the plaintiff-respondent-petitioner the cause was argued by *Maureen McGlynn Flanagan*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendants-appellants there was a brief by *Kristina E. Williamson* and *Reinstra & Van Dyk, S.C.*, New Richmond; *Kyle D. White*, St. Paul, MN and *Philip G. Villaume*, Bloomington, MN and oral argument by *Kristina E. Williamson and Kyle D. White*.

For the defendant-appellant-respondent there was a brief by *Frank W. Hunger*, assistant attorney general; *Peggy Ann Lautenschlager*, United States Attorney; *Michael Jay Singer* and *Patricia A. Millett*, Civil Division, Department of Justice, Washington, D.C. and *Pamela J. Marple*, Federal Programs Br., Civil Division, Department of Justice, Washington, D.C. and oral argument by *Patricia A. Millett*.

Amicus Curiae brief was filed by *Marc D. Stern* and the *American Jewish Congress*, New York, NY of the Coalition for the Free Exercise of Religion.

JANINE P. GESKE, J. This is a review of a published decision of the court of appeals, *State v. Miller et al.*, 196 Wis. 2d 238, 538 N.W.2d 573 (Ct. App. 1995).

Claiming infringement of their rights of religious freedom, Miller and the other seven Amish defendants (Respondents) appealed a circuit court order imposing forfeitures on them for failing to comply with Wis. Stat. § 347.245 (1993-1994), by not displaying the red and orange triangular slow-moving vehicle (SMV) emblem on their horse-drawn buggies. The court of appeals, relying on federal statutory and constitutional grounds, held that § 347.245 was unconstitutional as applied to the eight Amish defendants because the State failed to prove that the SMV symbol was the least restrictive alternative available that would satisfy the State's interest in traffic safety. *Miller*, 196 Wis. 2d at 243. We agree with the ultimate conclusion reached by the court of appeals, although we base our holding on the guarantees contained in the Wisconsin Constitution that the right to worship "according to the dictates of conscience" shall not be interfered with or infringed. Wis. Const. art. I, § 18.

## I. FACTS

The facts are not in dispute. The Respondents are all members of the Old Order Amish faith. Between January 1st and June 30th of 1993, the eight Respondents were individually issued citations for failure to display the SMV emblem on the rear of their horse-drawn buggies as required under Wis. Stat. § 347.245(1).[1] They assert that their religious convic-

---

[1] Wisconsin Stat. § 347.245 reads in relevant part:

**Identification emblem of certain slow moving vehicles.**
(1) . . . no person may operate on a highway, day or night, any vehicle or equipment, animal-drawn vehicle, . . . that usually travel at speeds less than 25 miles per hour . . . unless there is displayed . . ., a slow moving vehicle (SMV) emblem as described in and displayed as provided in sub. (2).

tions do not allow them to display the symbol which they object to for three reasons: (1) the fluorescent red and orange colors are too "loud and bright;" (2) it is a "worldly symbol" prohibited by their faith's requirement of separateness; and (3) as Amish, they cannot place their faith in a human symbol above that in God. It is important to note that there is no dispute as to the sincerity of the Respondents' religious beliefs or the burden imposed on them by the SMV statute. As further explained in the discussion section of this opinion, the Respondents face a crisis of conscience in being forced to choose between the rules of their faith that forbid display of the SMV symbol and Wis. Stat. § 347.245 which requires them to do so. As an alternative to the SMV symbol, all the buggies involved were equipped with a red lantern and white reflective tape outlining the perimeter of the rear of the buggy.[2]

In April of 1993, the Respondents filed motions to dismiss the citations on the grounds that the statutory requirement violated their rights of conscience under Article I, section 18 of the Wisconsin Constitution.[3]

---

[2] The Ordnung, or rule formulated by the local church counsel, requires that members of the order place 24 inches of reflective tape along the top of the buggy, 18 inches on either side, and 12 inches on the lower crosspiece. In addition, during inclement weather and at night, they are required to have a lit red lantern attached to the rear lower left of the buggy. The Amish also instruct their members to drive defensively and to stay on the shoulder of the highway whenever possible to let faster traffic pass with ease.

[3] Article I, § 18 of the Wisconsin Constitution provides, in relevant part:

> The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; . . . nor shall any control of, or interference with, the rights of conscience be permitted, . . .

Circuit Court Judge for Clark County, Michael W. Brennan ordered the eight citations joined. At the motion hearing and trial to the court on November 18, 1993, the circuit court permitted the Respondents to orally amend their motion by adding a federal constitutional claim based on the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, enacted two days earlier.[4]

The circuit court found that the Amish defendants were sincere in their religious beliefs and that the free exercise of their beliefs was burdened by § 347.245(1). However, the court denied the defendants' motion because it found that the State's compelling interest in traffic safety was not met by the proffered alternative warning method which it deemed "irregular and nonenforceable." Subsequently, the court of appeals reversed the circuit court's order holding that the statute was unconstitutional as applied to the Amish because "the State has not demonstrated that the SMV emblem is the least restrictive means of furthering the State's interest in traffic safety." *Miller*, Wis. 2d at 252.

---

[4] The Religious Freedom Restoration Act of 1993 (RFRA) provides in pertinent part:

> (a) In General.—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
>
> (b) Exception.—Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

## II. CLARIFICATION OF *KING*

Although we reach the same conclusion as did the court of appeals, we do not follow the same path. The court of appeals stated that its "resolution of this case rests on a constitutional as well as a statutory basis." *Miller*, 196 Wis. 2d at 247. Both of these bases however were federal (the First Amendment and RFRA), as the court of appeals concluded that the scope of its review of freedom of religion claims was limited to federal jurisprudence under its interpretation of our holding in *King v. Village of Waunakee*, 185 Wis. 2d 25, 517 N.W.2d 671 (1994). On the contrary, we reject such limitations to review of this vital liberty, and note that our holding in this case is based on the protections embodied in Art. I, § 18 of the Wisconsin Constitution.[5]

The court of appeals began its analysis with a discussion of this court's recent decision in *King*, 185 Wis. 2d 25. The appellate court accurately notes that in the *King* opinion we commented that Art. I, § 18 of the Wisconsin Constitution is our state's "equivalent" of the Establishment and Free Exercise Clauses of the

---

[5] Although we base today's decision solely on the protections guaranteed by the Wisconsin Constitution, we note that every other jurisdiction that has faced this issue has also decided in favor of the Amish. *See State v. Hershberger*, 462 N.W.2d 393 (Minn. 1990) (concluding that application of the slow-moving vehicle statute to the Old Order Amish defendants violated their freedom of conscience rights as protected under the Minnesota Constitution); *People v. Swartzentruber*, 429 N.W.2d 225 (Ct. App. Mich. 1988) (holding the state's SMV statute as applied to Old Order Amish defendants unconstitutional because the state's interest in public safety was not sufficiently compelling to override the right to free exercise protected by the First Amendment of the United States Constitution).

First Amendment of the United States Constitution and that they serve the "same dual purpose of prohibiting the establishment of religion by the state and protecting a person's free exercise of it." *Miller*, 196 Wis. 2d at 245 (citing *King*, 185 Wis. 2d at 52, 54-55). However, we disavow the conclusion reached by the court of appeals that our opinion in *King* "requires that [Wisconsin courts] construe Article I, § 18 in the same manner as the Free Exercise Clause of the First Amendment." *Miller*, 196 Wis. 2d at 245.

In *King* we were faced with the question of whether the town of Waunakee's annual holiday display, which contains a nativity scene, violated the Establishment Clause of the First Amendment. *King*, 185 Wis. 2d at 31. Accordingly, we conducted our analysis by applying federal constitutional principles within the context of United States Supreme Court precedent. *Id.* at 31-52. It was only after concluding that the display did not violate the federal Establishment Clause that we addressed the issue in light of our state constitution.

Initially, we point out that *King* did not involve a challenge based on the right of conscience, but rather the question of whether the display of a creche in a municipality's holiday display constituted an endorsement of the Christian religion in violation of the Establishment Clause of the First Amendment. *See King*, 185 Wis. 2d at 37. Further, in that case, the counsel for the plaintiffs conceded that this court must look to the federal case law, even when interpreting the state establishment provision. *Id.* at 55.

The majority opinion in *King* should be understood in the framework of what was not said as well as what was said. Nowhere in *King* did we hold that Article I, § 18 is subsumed by the First Amendment. Although

we quoted with approval the court of appeals' comment that because both clauses serve the same dual purpose we will interpret our provision "in light of United States Supreme Court cases," that statement should not be read as an abandonment of our long-standing recognition that the language of the two documents is not the same. Some questions cannot be fully illuminated by the light of federal jurisprudence alone, but may require examination according to the dictates of the more expansive protections envisioned by our state constitution.

Contrary to the reading ascribed to the *King* majority by both the dissent in that opinion (*King*, 185 Wis. 2d at 59-60) and the court of appeals in this instance (*Miller*, 196 Wis. 2d at 245), we did not repudiate a reading of the Wisconsin Constitution which provides stronger protection of religious freedom than that envisioned in the federal constitution.[6] In fact, we explicitly stated that we reached our conclusion given the specific facts in *King*, "even assuming that" our state establishment provision might be " 'less flexible' than the First Amendment." *King*, 185 Wis. 2d at 54

---

[6] This erroneous interpretation of our holding in *King* served as the basis of a recent law review article which opined that our opinion in *King* could ultimately lead to the "downfall of religious freedom in Wisconsin," by setting a "dangerous precedent" that challenges based on Wis. Const. art. I, § 18 must be determined solely under First Amendment jurisprudence. Rhonda L. Lanford, Note, *King v. Village of Waunakee: Redefining Establishment Clause Jurisprudence in Wisconsin*, 1995 Wis. L. Rev. 185, 216, 214. However, other commentators have correctly taken a more measured approach by pointing out that *King* did not necessarily preclude independent analysis of freedom of religion claims under the Wisconsin Constitution. *See* Robert L. Gordon, *How Vast is King's Realm?*, Wisconsin Lawyer 18 (Aug. 1995).

(quoting *State ex rel. Reynolds v. Nusbaum*, 17 Wis. 2d 148, 149, 115 N.W.2d 761 (1962)).

This court has previously commented that the portions of Art. I, § 18, dealing with the freedom of conscience,

> operate as a perpetual bar to the state, . . . from the infringement, control, or interference with the individual rights of every person . . . . They presuppose the voluntary exercise of such rights by any person or body of persons who may desire, and by implication guaranty protection in the freedom of such exercise.

*State ex rel. Weiss v. District Board*, 76 Wis. 177, 210-11, 44 N.W. 967 (1890). In recognition of the state's unique history, the drafters of our constitution created a document that embodies the ideal that the diverse citizenry of Wisconsin shall be free to exercise the dictates of their religious beliefs. We reiterate our previous observation:

> Wisconsin, as one of the later states admitted into the Union, having before it the experience of others, and probably in view of its heterogeneous population, . . . has, in her organic law, probably furnished a more-complete bar to any preference for, or discrimination against, any religious sect, organization or society than any other state in the Union.

*Reynolds*, 17 Wis. 2d at 165 (quoting *Weiss*, 76 Wis. at 207).

Although the First Amendment and Article I, § 18 serve the same underlying purposes and are based on the same precepts, we conclude that our analysis of the freedom of conscience as guaranteed by the Wisconsin

Constitution is not constrained by the boundaries of protection the United States Supreme Court has set for the federal provision. We hold that our state constitution provides an independent basis on which to decide this case.[7]

## III. STANDARD OF REVIEW

██ We will apply the compelling state interest/least restrictive alternative test to our review of this claim that Wis. Stat. § 347.245(1), as applied to the eight Amish respondents, violates freedom of exercise and freedom of conscience under Art. I, § 18 of the Wisconsin Constitution. Succinctly stated, under this analysis, the challenger carries the burden to prove: (1) that he or she has a sincerely held religious belief, (2) that is burdened by application of the state law at issue. Upon such proof, the burden shifts to the State to prove: (3) that the law is based on a compelling state interest, (4) which cannot be served by a less restrictive alternative.

This test evolved from the decisions of the United States Supreme Court in *Sherbert v. Verner*, 374 U.S. 398, 406-07 (1963) (state must not only show compelling interest but must "demonstrate that no alternative forms of regulation would [serve the state's interest] without infringing First Amendment rights"), *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("only those interests of the highest order and those not otherwise

---

[7] This conclusion parallels that reached by the Supreme Court of Minnesota, which found that their state constitution supplied an "independent and adequate" basis for determining a similar challenge brought by the Old Order Amish to a slow-moving vehicle statute. *State v. Hershberger*, 462 N.W.2d 393, 396-97 (Minn. 1990).

served can overbalance legitimate claims to the free exercise of religion"), and *Thomas v. Review Board, Ind. Emply. Sec. Div.*, 450 U.S. 707, 718 (1981) ("state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest").

However, in 1990, the United States Supreme Court repudiated use of the compelling state interest standard in claims based solely on the Free Exercise Clause of the First Amendment. *Employment Div., Oregon Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990).[8] *Smith*, like *Sherbert*, involved a challenge to the denial of unemployment benefits based on free exercise grounds. After the *Smith* claimants were fired for ingesting the hallucinogenic drug peyote, the Oregon Department of Human Services denied them unemployment compensation despite the claimants' showing that they used the peyote in a religiously inspired sacrament of the Native American Church. The United States Supreme Court specifically concluded that a state is not barred by the Free Exercise

---

[8] The *Smith* Court concluded, however, that the compelling state interest test was still applicable in "hybrid" cases involving claims of infringement of other constitutionally protected rights in addition to a free exercise claim. *Employment Div., Oregon Dep't of Human Resources v. Smith*, 494 U.S. 872, 881-882 (1990). Thus, the Respondents urge that the *Sherbert* analysis can be applied to their challenge to the SMV statute under the First Amendment because the statute infringes upon the rights of freedom of travel and assembly, as well as the free exercise of their religious beliefs. Although this position may have merit, we do not need to resolve the appropriate standard of review under the United States Constitution because, as stated earlier in this opinion, we conclude that our decision today is firmly grounded on the Wisconsin Constitution alone.

Clause from prohibiting sacramental peyote use and therefore can deny unemployment benefits for such use. In its opinion, the Court rejected the *Sherbert* test and instead found that neutral, generally applicable state laws which are not aimed at regulation of religious belief and which do not implicate other constitutional protections are permissible under the First Amendment even if they interfere with conduct based on religious convictions. *Smith*, 494 U.S. at 882. The United States Congress responded in 1993 with passage of the Religious Freedom Restoration Act which implicitly rejected *Smith* and statutorily adopted the four-step *Sherbert* test for analysis of free exercise based challenges.[9]

Despite the Court's revision of the test applicable to federal claims, we concur with the logic of the Minnesota Supreme Court in a post-*Smith* review of a similar Amish buggy case:

> while the terms "compelling state interest" and "least restrictive alternative" are creatures of federal doctrine, concepts embodied therein can provide guidance as we seek to strike a balance under the [state] Constitution between freedom of conscience and the state's public safety interest.

*State v. Hershberger*, 462 N.W.2d 393, 398 (Minn. 1990). In assessing previous free conscience and free exercise challenges, this court, and the court of appeals, have utilized the principles and analytical

---

[9] Because we conclude that the statutory requirement for display of the SMV symbol violates this state's guarantee of freedom of conscience, we need not further address the federal issues raised in this appeal. Specifically, we do not reach the issue of the constitutionality or applicability of RFRA.

framework developed by the United States Supreme Court in *Sherbert, Yoder,* and *Thomas. See State v. Yoder,* 49 Wis. 2d 430, 182 N.W.2d 539, *aff'd sub. nom Wisconsin v. Yoder,* 406 U.S. 205 (1972); *Kollasch v. Adamany,* 99 Wis. 2d 533, 299 N.W.2d 891 (Ct. App. 1981), *rev'd on other grounds,* 104 Wis. 2d 552, 313 N.W.2d 47 (1981); *State v. Peck,* 143 Wis. 2d 624, 422 N.W.2d 160 (Ct. App. 1988). We conclude that the guarantees of our state constitution will best be furthered through continued use of the compelling interest/least restrictive alternative analysis of free conscience claims and see no need to depart from this time-tested standard.

## IV. APPLICATION OF THE COMPELLING INTEREST/LEAST RESTRICTIVE ALTERNATIVE TEST

The State concedes that the Respondents' challenge to Wis. Stat. § 347.245(1), is based on sincerely held religious beliefs. As members of the Old Order Amish, the eight Respondents live "separate and apart from the world" in a community in which religion permeates every aspect of their lives. The United States Supreme Court noted in *Wisconsin v. Yoder,* 406 U.S. 205, 210 (1972), that "the Old Order Amish religion pervades and determines the entire mode of life of its adherents."

The local church district formulates rules, or Ordnung, which set the religious parameters for permissible behavior. The Ordnung governing Respondents' community prohibits the use of "loud colors" and "worldly symbols." The buggy used by the Amish is a plain black four-sided box on wheels which is horse-drawn. It is not only their mode of transporta-

tion but is considered an expression of their religious beliefs.

The State also concedes that application of the statute to the Respondents constitutes a burden on their sincerely held religious beliefs. At trial, two of the Respondents testified that they could not display the loud and worldly SMV symbol on their buggies, because to do so would be in direct violation of the Ordnung. To violate a rule of the church would be in direct conflict with the dictates of their conscience and would constitute a sin for which they would be subject to shunning or excommunication. Section 347.245 requires the Respondents to place the red and orange SMV symbol on their buggies while driving on public roads. However, the rules of their faith prohibit the Respondents from displaying the loud, worldly symbol. One Respondent testified that, rather than be forced to violate the dictates of conscience, he would move out of the state to escape imposition of a law with which he could not in conscience comply.

Once it has been established that compliance with a statute would burden a challenger's sincerely held religious beliefs, the burden shifts to the State to prove that such action is justified by a compelling state interest. *Thomas*, 450 U.S. at 718. This court, as well as the Amish Respondents, agree that the State possesses a compelling interest in public safety on the highways.

We now turn to the final stage of the four-part test—the State must show that its interests cannot be met by alternative means that are less restrictive of the challengers' free exercise of religion. *Id.* The Amish assert that their proffered alternative of placing white reflective tape around the perimeter of their buggies adequately serves public safety concerns. At trial, Jack

Anderson, a licensed Wisconsin engineer and expert in traffic safety, testified that the white reflective tape was actually superior to the SMV emblem for a number of reasons. At a distance, the SMV symbol is not recognizable as a triangle, but rather appears as a "red blob." The inner orange portion of the symbol is not visible in the dark, and red reflective tape is approximately four times *less* bright than white tape. Anderson testified that brightness is a critical safety factor because brighter objects will be perceived earlier than darker ones, allowing more time for an approaching driver to react in order to avoid a collision.

Anderson also testified that the method of placing tape around the rear perimeter of the buggy is safer than that called for under § 347.245, which requires the SMV emblem be displayed on the lower left corner of the slow-moving vehicle. The four strips of tape provide depth perception, giving approaching motorists a frame of reference to aid in calculating the distance to an object and the rate of closure, according to Anderson. Additionally, the tape at the top and sides of the buggy can be seen in hilly terrain at times when visibility of the lower left portion of the vehicle is obscured. The Respondents supplied a videotape illustrating both the heightened visibility of the white tape and the effectiveness of the outlining in hilly country.

The State argues that the trial court correctly determined that the "State has compelling interests that can't be met in this matter by this irregular and nonenforceable alternative . . . ." The critical element for safety, according to the State, is uniformity because when the designated SMV symbol is used it provides "instant subliminal recognition" to one viewing it that a slow moving vehicle is ahead. While the State does not dispute that a perimeter of white reflective tape is

71

more visible than the SMV symbol in some situations, it contends that the proffered alternative fails because it is not an instantly recognizable symbol that universally conveys the message that a slow-moving vehicle is on the roadway ahead. In essence, the State maintains that there can be no adequate alternative, because its compelling interest in traffic safety can *only* be served by the unique and uniform symbol designated in the statute—the red and yellow truncated triangle.

However, there are problems with this contention. The State's faith in the "instant recognizability" of the symbol and the universal knowledge of its meaning seems misplaced. By its own terms, the statute is not universally applied; it contains exemptions for numerous kinds of slow-moving vehicles including bicycles, mopeds, vehicles being towed, equipment engaged in highway construction or maintenance, and any vehicle displaying a flashing 4-inch diameter yellow or amber light on the left rear. *See* Wis. Stat. § 347.245(1)-(5). Further, as Jack Anderson, the Respondent's traffic safety expert testified, similar symbols which are meant to convey different meanings are in common use, such as orange triangles which are used along interstate highways to signify the presence of a stalled truck.

Finally, and most damaging to its case, the State was unable to put forth any concrete evidence that the SMV symbol actually serves the interest of promoting public safety better than the white tape alternative. Although asked, the State was unable to provide data on the relative distances at which the white tape and the SMV symbol could be seen, nor could it supply a distance at which the SMV symbol was clearly recognizable as a triangle rather that a red blob. The State could cite to no studies comparing frequency of acci-

dents involving the two different warning methods, nor did it present any evidence of any collisions that had occurred between motor vehicles and Amish buggies not displaying the SMV symbol.

We conclude that the State has failed to demonstrate that public safety on the highways cannot be served by the Respondents' proposed less restrictive alternative of the white reflective tape and the red lantern. The statutory burden placed by the State upon the sincerely held religious beliefs of the Respondents therefore cannot be justified. Thus, we hold that Wis. Stat. § 347.245, as applied to the eight Old Order Amish Respondents, violates the guarantee of freedom of conscience found in Article I, section 18 of the Wisconsin Constitution.

*By the Court.*—The decision of the court of appeals is affirmed.